**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

WALTER L. WILLIAMS,

                Petitioner,

vs.                                   Case No.:    3:14-cv-740-MMH-MCR
                                           3:10-cr-13-MMH-MCR

UNITED STATES OF AMERICA,

                Respondent.

_____/

## **ORDER**

    This case is before the Court on Petitioner Walter L. Williams's <u>pro se</u> "Motion

for Dismissal of Indictment with Prejudice Due to Grand Jury Irregularities," which

the Court reconstrued as an Amended Motion Under 28 U.S.C. § 2255 to Vacate, Set

Aside, or Correct Sentence (Civ. Doc. 1; Amended § 2255 Motion) after having issued

notification pursuant to <u>Castro v. United States</u>, 540 U.S. 375 (2003) (Crim. Docs. 90,

95).[1] Williams also filed a Motion for Leave to Supplement, in which he asserts

challenges to being sentenced under the Armed Career Criminal Act (ACCA). (Civ.

Doc. 7-1 / Civ. Doc. 16; First Motion to Supplement). The United States has responded

to both motions. (Civ. Doc. 6; Response). Williams then filed two reply briefs (Civ. Doc.

13; First Reply, Civ. Doc. 18; Second Reply), as well as a "Motion Seeking to Dismiss

---

[1]    Citations to the record in the underlying criminal case, <u>United States vs. Walter
Williams</u>, No. 3:10-cr-13-MMH-MCR, will be denoted "Crim. Doc. __." Citations to the record
in the civil § 2255 case, No. 3:14-cv-740-MMH-MCR, will be denoted "Civ. Doc. __." Citations
to electronically available documents are to the page number designated by CM/ECF.

Suppression Hearing," which the Court construes as a second motion for leave to supplement (Civ. Doc. 17; Second Motion to Supplement).

The issues raised in this action have been briefed and are ripe for a decision. Pursuant to 28 U.S.C. § 2255 and Rule 8(a) of the Rules Governing Section 2255 Proceedings[2], the Court has considered the need for an evidentiary hearing and determines that a hearing is not necessary to resolve the merits of this action. See Rosin v. United States, 786 F.3d 873, 877 (11th Cir. 2015) (an evidentiary hearing on a § 2255 motion is not required when the petitioner asserts allegations that are affirmatively contradicted by the record or patently frivolous, or if in assuming the facts that he alleges are true, he still would not be entitled to any relief); Patel v. United States, 252 F. App'x 970, 975 (11th Cir. 2007).[3] For the reasons set forth below, Williams's request for § 2255 relief is due to be denied.

## I.    Background

On January 14, 2010, a grand jury sitting in the Middle District of Florida returned a five-count indictment against Williams. (Crim. Doc. 1; Indictment). In Counts One through Three, the government charged Williams with distributing or possessing with intent to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). In Count Four, the government charged Williams with possession of

---

[2]    Rule 8(a) of the Rules Governing Section 2255 Proceedings expressly requires the Court to review the record, including any transcripts and submitted materials, to determine whether an evidentiary hearing is warranted before resolving a § 2255 motion.

[3]    Although the Court does not rely on unpublished opinions as precedent, they may be cited throughout this Order as persuasive authority on a particular point.  Rule 32.1 of the Federal Rules of Appellate Procedure expressly permits the Court to cite to unpublished opinions that have been issued on or after January 1, 2007.  Fed. R. App. P. 32.1(a).

cocaine with intent to distribute that substance, also in violation of §§ 841(a)(1) and 841(b)(1)(C). Lastly, in Count Five, the government charged Williams with possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). Williams initially pled not guilty to the charges. (Crim. Doc. 13; Minute Entry of Arraignment).

Williams, through his first attorney (Susan Yazgi), moved to suppress evidence of a firearm, drugs, and other items that police obtained at the time of his arrest, allegedly in violation of Williams's rights under the Fourth and Fifth Amendments. (Crim. Doc. 16; Motion to Suppress). A United States Magistrate Judge conducted an evidentiary hearing (Crim. Doc. 23; Suppression Hr'g Tr.), and afterward recommended that the Court deny the Motion to Suppress (Crim. Doc. 25; Report and Recommendation on Motion to Suppress). Williams objected to the Magistrate Judge's application of the law to the facts (Crim. Doc. 32; Amended Objections), but the Court overruled the objections, adopted the Report and Recommendation, and denied the Motion to Suppress (Crim. Doc. 48; Order Denying Motion to Suppress).

Two months later, now with new counsel (Noel Lawrence), Williams proceeded to a bench trial based on stipulated facts. (See Crim. Doc. 51; Minute Entry of Stipulated Bench Trial, Crim. Doc. 75; Bench Trial Tr.). Williams signed in open court a "Waiver of Right to Trial by Jury and Request for Specific Findings of Fact." (Crim. Doc. 52; Jury Trial Waiver). In advance of the hearing, Williams also signed a stipulation of facts, in which he admitted with respect to Counts One through Four that he knowingly distributed heroin and possessed heroin and cocaine with intent to

distribute. (Crim. Doc. 53; Stipulation of Facts at 1-2). With respect to Count Five, Williams stipulated that he knowingly possessed a .45 caliber pistol after having been convicted of several felony offenses, including two prior convictions for the sale, manufacture, delivery, or possession with intent to sell, manufacture, or deliver cocaine within 1,000 feet of a business, and one prior conviction for possession of cocaine with intent to sell. <u>Id.</u> at 3. Williams acknowledged that by agreeing to the Stipulation of Facts, he was "agreeing that the elements required to establish that he is factually guilty of the offenses of Counts One through Five of the Indictment pending before him are established." <u>Id.</u> at 4.

The Court reviewed each of the stipulated facts with Williams, and Williams acknowledged the government could prove each fact beyond a reasonable doubt if the case proceeded to trial. Bench Trial Tr. at 14-24. Williams also acknowledged that by stipulating to those facts, he was effectively stipulating to a finding of guilt as to each count. <u>Id.</u> at 24.[4] Having determined that Williams's stipulation was knowledgeable and voluntary, <u>id.</u> at 9-14, 24-25, the Court accepted the stipulated facts and, after considering the elements of the respective offenses, adjudicated Williams guilty of the crimes charged in Counts One through Five, <u>id.</u> at 25-33.[5]

According to the final Presentence Investigation Report (PSR), Williams qualified to be sentenced as an armed career criminal under 18 U.S.C. § 924(e) and

---

[4]     As indicated during a pretrial status conference, Williams proceeded to a bench trial based on stipulated facts, rather than plead guilty, to preserve his right to appeal the denial of his Motion to Suppress. (Crim. Doc. 74; Status Conference Transcript at 2-3).

[5]     Although Williams stipulated to the existence and nature of his prior convictions, he reserved the right to contest whether they qualified as ACCA predicate offenses. <u>Id.</u> at 31-32.

U.S.S.G. § 4B1.4. PSR at ¶ 26.[6] The Probation Office recommended the application of the ACCA enhancement based on two prior convictions for the sale, manufacture, delivery, or possession with intent to sell, manufacture, or deliver cocaine within 1,000 feet of a business (the "2001 drug offenses"), and one prior conviction for the possession of cocaine with intent to sell (the "1996 drug offense"), each in the state of Florida. Id.; see also id. at ¶¶ 35, 38. In the PSR, the Probation Office calculated a total offense level of 31, consisting of a base offense level of 34 and a three-level reduction for acceptance of responsibility. Id. at ¶¶ 27-29. The Probation Office also recommended that Williams's Criminal History fell within Category VI, yielding an advisory sentencing range of 188 to 235 months in prison. Id. at ¶¶ 40, 56.

Williams objected to the application of the ACCA enhancement, arguing that the Court should not count the 2001 drug offenses as two separate ACCA predicates. (Crim. Doc. 57; Motion to Strike ACCA Enhancement), (Crim. Doc. 76; Sentencing Transcript at 4-8).[7] Although Williams acknowledged that he committed the drug offenses two days apart in April 2001, he argued that both offenses were part of a

---

[6]     Under the ACCA, a defendant convicted of being a felon in possession of a firearm is subject to an enhanced sentence of 15 years to life in prison if he has three or more prior convictions for a "violent felony" or a "serious drug offense," or both, committed on different occasions from one another. 18 U.S.C. § 924(e)(1). Without the enhancement, the maximum sentence for possession of a firearm by a convicted felon is 10 years in prison. § 924(a)(2).

[7]     To support the ACCA enhancement, the United States submitted state court documents from the prior convictions. (Crim. Doc. 64; Minute Entry of Sentencing and Exhibits). Exhibit 1 is a judgment, dated May 3, 2002, adjudging Williams guilty of two counts of the sale, manufacture, delivery, or possession with intent to sell, manufacture, or deliver cocaine within 1,000 feet of a convenience business, in violation of Florida Statute Section 893.13(1)(e)1. Id. at 2-8. Exhibit 2 contains the charging documents for the 2001 drug offenses and the 1996 drug offense. Id. at 9-14. Exhibit 3 is a guilty plea form, showing that Williams pled guilty to the 1996 drug offense in exchange for a suspended sentence and a withhold of adjudication. Id. at 15-18.

single criminal episode because both occurred during the same reverse sting operation. Sentencing Tr. at 6-7. Additionally, Williams argued that his 1996 drug offense should not count as an ACCA predicate because the state court withheld adjudication, although he admitted that United States v. Santiago, 601 F.3d 1241 (11th Cir. 2010), foreclosed this argument. Sentencing Tr. at 18-20. The Court overruled both objections and sustained the application of the ACCA enhancement. Id. at 8, 21.[8] The Court determined that the Probation Office correctly calculated Williams's advisory Sentencing Guidelines range at 188 to 235 months, based on a total offense level of 31 and a criminal history category of VI. Id. at 14. After hearing from the parties, the Court varied slightly below the Guidelines range and sentenced Williams to concurrent terms of 180 months in prison as to each of Counts One through Five, followed by a five-year term of supervised release. Id. at 25.

Williams appealed his convictions, "raising one issue: whether the district court erred in denying his motion to suppress evidence the police found in a search of his vehicle following his arrest, to-wit: a Smith & Wesson .45 caliber pistol, heroin, and cocaine." United States v. Walter Williams, 476 F. App'x 373, 374 (11th Cir. 2012). As the search was conducted without a warrant, Williams "contend[ed] that none of the exceptions for warrantless searches applied." Id. The Eleventh Circuit Court of Appeals rejected Williams's arguments and found that the denial of the Motion to

---

[8]      Williams also objected that a Criminal History Category of VI overrepresented his criminal record, id. at 9-10, and that the Probation Office should not have given Williams any criminal history points for the 2001 drug offenses because adjudication had been withheld, id. at 12-13. The Court overruled Williams's objection that the PSR overrepresented his criminal history. Id. at 10. Williams withdrew the latter objection upon realizing that he had in fact been adjudicated guilty for the 2001 drug offenses. Id. at 13-14.

6

Suppress was appropriate. Id. at 375. Thus, the court affirmed Williams's convictions and sentence.

Williams then petitioned the United States Supreme Court for a writ of certiorari, but the Supreme Court denied the petition on October 1, 2012. Walter Williams v. United States, 568 U.S. 870 (2012). Less than a year later, Williams timely initiated the instant § 2255 proceedings.[9]

## II.  Law

### A.  28 U.S.C. § 2255

Pursuant to Title 28, United States Code, Section 2255, a person in federal custody may move to vacate, set aside, or correct his sentence. Section 2255 permits such collateral challenges on four specific grounds: (1) the imposed sentence was in violation of the Constitution or laws of the United States; (2) the court did not have jurisdiction to impose the sentence; (3) the imposed sentence exceeded the maximum authorized by law; or (4) the imposed sentence is otherwise subject to collateral attack. 28 U.S.C §2255(a) (2008). Only jurisdictional claims, constitutional claims, and claims of error that are so fundamentally defective as to cause a complete miscarriage of justice will warrant relief through collateral attack. United States v. Addonizio, 442 U.S. 178, 184-86 (1979).

---

[9]    Williams originally filed a pro se Motion for Dismissal of Indictment on the criminal docket on September 3, 2013. (Crim. Doc. 86). After the Court issued a Castro notice (Crim. Doc. 90) and two follow-up orders (Crim. Docs. 91, 92), Williams eventually opened a separate civil action on May 6, 2014, by refiling substantially the same motion (Crim. Doc. 94 / Civ. Doc. 1). The Court construed the second motion as an Amended § 2255 Motion, and deems it to have related back to the original pro se Motion for Dismissal of Indictment that was filed on September 3, 2013.

## B. Procedural Default

"Courts have long and consistently affirmed that a collateral challenge, such as a § 2255 motion, may not be a surrogate for a direct appeal." <u>Lynn v. United States</u>, 365 F.3d 1225, 1232 (11th Cir. 2004) (citing <u>United States v. Frady</u>, 456 U.S. 152, 165 (1982)). "Under the procedural default rule, 'a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding.'" <u>McKay v. United States</u>, 657 F.3d 1190, 1196 (11th Cir. 2011) (quoting <u>Lynn</u>, 365 F.3d at 1234). "This rule generally applies to all claims, including constitutional claims." <u>Lynn</u>, 365 F.3d at 1234 (citing <u>Reed v. Farley</u>, 512 U.S. 339, 354 (1994)).

A petitioner can avoid a procedural default by showing either (1) cause for and actual prejudice from the default, or (2) that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." <u>Id.</u> (quoting <u>Murray v. Carrier</u>, 477 U.S. 478, 496 (1986)). With respect to "cause and prejudice," "to show cause for procedural default, [a petitioner] must show that some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [the petitioner's] own conduct." <u>Id.</u> at 1235 (citing <u>Smith v. Jones</u>, 256 F.3d 1135, 1145 (11th Cir. 2001)). Ineffective assistance of counsel may constitute cause for a default, but only if the ineffective assistance claim has merit. <u>United States v. Nyhuis</u>, 211 F.3d 1340, 1344 (11th Cir. 2000). The petitioner must also show that "actual prejudice" resulted from the claim not being raised on direct appeal. <u>Lynn</u>, 365 F.3d at 1234 (citing <u>Bousley v.</u>

8

United States, 523 U.S. 614, 622 (1998)). The second exception, actual innocence, "is exceedingly narrow in scope as it concerns a petitioner's 'actual' innocence rather than his 'legal' innocence." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (citations omitted). "To show actual innocence of the crime of conviction, a movant 'must show that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt' in light of the new evidence of innocence." McKay, 657 F.3d at 1196 (quoting Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995)). The actual innocence exception is supposed to "remain 'rare' and … only be applied in the 'extraordinary case.'" Schlup, 513 U.S. at 321.

### C. Ineffective Assistance of Counsel

A petitioner's challenge to his sentence based on a Sixth Amendment claim of ineffective assistance of counsel is normally considered on collateral review. United States v. Teague, 953 F.2d 1525, 1534 n. 11 (11th Cir. 1992). To establish ineffective assistance of counsel, a § 2255 petitioner must demonstrate both: (1) that his counsel's conduct amounted to constitutionally deficient performance, and (2) that counsel's deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984); Martin v. United States, 949 F.3d 662, 667 (11th Cir. 2020). In determining whether the petitioner has shown that counsel performed deficiently, the Court adheres to the standard of reasonably effective assistance. Weeks v. Jones, 26 F.3d 1030, 1036 (11th Cir. 1994) (citing Strickland, 466 U.S. at 688). The petitioner must show, in light of all the circumstances, that counsel's performance fell outside the "'wide range of professionally competent assistance.'" Scott v. United States, 890 F.3d

1239, 1258 (11th Cir. 2018) (quoting <u>Payne v. Allen</u>, 539 F.3d 1297, 1315 (11th Cir. 2008)). In other words, "[t]he standard for effective assistance of counsel is reasonableness, not perfection." <u>Brewster v. Hetzel</u>, 913 F.3d 1042, 1056 (11th Cir. 2019) (citing <u>Strickland</u>, 466 U.S. at 687). To satisfy the second requirement, that counsel's deficient performance prejudiced the defense, the petitioner must show a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. <u>Martin</u>, 949 F.3d at 667 (citing <u>Padilla v. Kentucky</u>, 559 U.S. 356, 366 (2010)). In determining whether a petitioner has met the two prongs of deficient performance and prejudice, the Court considers the totality of the evidence. <u>Strickland</u>, 466 U.S. at 695. However, because both prongs are necessary, "there is no reason for a court… to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." <u>Id.</u> at 697; <u>see also</u> <u>Wellington v. Moore</u>, 314 F.3d 1256, 1261 n.1 (11th Cir. 2002) ("We need not discuss the performance deficiency component of [petitioner's] ineffective assistance claim because failure to satisfy the prejudice component is dispositive.").

## III.   Discussion

Williams's allegations do not warrant relief under § 2255. As explained below, Williams's claims are either procedurally defaulted or lack merit in law and fact.

### A. Amended § 2255 Motion: Grand Jury Irregularities

In his Amended § 2255 Motion, Williams alleges various grand jury irregularities and contends that Rule 6, Federal Rules of Criminal Procedure ("Rule(s)"), is itself unconstitutional. Specifically, Williams alleges that: (1) the

prosecutor manipulated the grand jury proceedings, (2) the prosecutor violated <u>United States v. John Williams</u>, 504 U.S. 36 (1992), by holding onto unspecified grand jury records, (3) the prosecutor failed to convene an independent grand jury, and (4) the Indictment did not comply with Rule 6(f) because (a) at least twelve members of the grand jury did not concur in the Indictment and (b) the Indictment was not returned in open court. Amended § 2255 Motion at 6-8, 30-31. Williams states that he can provide an "offer of proof" to support his allegations, <u>id.</u> at 6, but he ultimately does not detail what the "offer of proof" would show. Williams also argues that Rule 6 itself is unconstitutional because "it allows the prosecutor to hold some grand jury records, and any grand jury records held or controlled by the prosecutor is [sic] in direct violation of the grand jury clause of the Constitution and <u>U.S. v. [John] Williams</u>." <u>Id.</u> at 7. The Court construes this last allegation as a challenge to Rule 6(e)(1), which states: "Unless the court orders otherwise, an attorney for the government will retain control of the recording, the reporter's notes, and any transcript prepared from those notes." Fed. R. Crim. P. 6(e)(1). The United States responds that these claims are procedurally defaulted as well as meritless. Response at 3-5.

The Court concludes that the above summarized claims are, indeed, procedurally defaulted. Federal Rule of Criminal Procedure 12(b) provides an avenue for a defendant to file a pretrial motion based on "a defect in the indictment or information." Fed. R. Crim. P. 12(b)(3)(B). But Williams never filed such a motion before trial. Moreover, on direct appeal, Williams did not raise any challenge to the constitutionality of Rule 6(e)(1), nor did he raise any challenge to the integrity of the

Indictment or grand jury proceedings. Rather, on appeal, Williams only addressed the denial of his Motion to Suppress. See Walter Williams, 476 F. App'x at 374. Williams's current challenges to the Indictment, the grand jury proceedings, and the constitutionality of Rule 6(e)(1) all could have been raised on direct appeal[10], but Williams failed to do so. Williams has not established cause for defaulting these claims or prejudice therefrom.[11] Williams also does not allege that he can avoid the procedural default bar based on a showing of actual innocence.[12] The Court has also considered whether Williams's claims suggest the Court lacked subject matter jurisdiction and finds that they do not. See, e.g., United States v. Cotton, 535 U.S. 625, 630 (2002) (although subject-matter jurisdiction can never be waived or forfeited, "defects in an indictment do not deprive a court of its power to adjudicate a case."); United States v. Nelson, 155 F.3d 563, *1 (4th Cir. 1998) (Table) (defendant waived claim that at least 12 grand jurors did not concur in the indictment because the claim was non-jurisdictional and defendant did not raise the issue in a pretrial motion); United States v. Kahlon, 38 F.3d 467, 469 (9th Cir. 1994) (the failure to return an indictment in open court was a non-jurisdictional, procedural defect). The Indictment

---

[10]    Alleged defects in the grand jury process are properly the subject of a direct appeal. See United States v. Amigable, 242 F.3d 383 (9th Cir. 2000) (Mem.) ("Finally, the district court properly concluded that Amigable's claim that he was denied his right to a proper grand jury indictment was procedurally defaulted. Amigable did not raise this claim in his direct appeal."); Nwafor v. United States, 114 F.3d 1191 (7th Cir. 1997) (Table) (§ 2255 movant's claim that he was tried on charges that were not presented to a grand jury was procedurally defaulted because he did not raise it on direct appeal).

[11]    For example, nowhere in the Amended § 2255 Motion does Williams allege that trial counsel was ineffective for not moving to dismiss the Indictment based on grand jury "irregularities" or that appellate counsel was ineffective for not raising this issue on appeal.

[12]    Notably, an actual innocence claim would be dubious, given Williams's stipulation that he distributed heroin, possessed heroin and cocaine with intent to distribute, and possessed a firearm as a convicted felon. See Stipulation of Facts; Bench Trial Tr. at 14-24.

was sufficient to vest the Court with subject matter jurisdiction, pursuant to 18 U.S.C. § 3231, because it alleged violations of validly-enacted federal criminal statutes. See Indictment; United States v. Brown, 752 F.3d 1344, 1354 (11th Cir. 2014) ("So long as the indictment charges the defendant with violating a valid federal statute as enacted in the United States Code, it alleges an 'offense against the laws of the United States' and, thereby, invokes the district court's subject-matter jurisdiction" under 18 U.S.C. § 3231) (citation omitted). As such, Williams's challenges to the indictment process and to the constitutionality of Rule 6(e)(1) are procedurally defaulted, and he fails to establish any basis to overcome the effect of the procedural default. Thus, relief on these claims is due to be denied for this reason alone.

Even if Williams could overcome the procedural default, his allegations are (1) refuted by the record, (2) conclusory, or (3) meritless as a matter of law. First, while Williams contends that the Indictment was not returned in open court, as Rule 6(f) requires, the docket text states: "INDICTMENT returned in open Court as to Walter L. Williams (1) count(s) 1-4, 5." (Crim. Doc. 1, CM/ECF docket text). Although Williams alleges that the docket text "is a lie," Amended § 2255 Motion at 8, he provides no support for this bare conclusory assertion. Second, Williams asserts that the prosecutor manipulated the grand jury proceedings and failed to convene an independent grand jury, but he does not offer any specific, non-conclusory facts to support these allegations. Vague and conclusory allegations, such as those Williams makes, are insufficient to warrant an evidentiary hearing, let alone habeas relief. See Tejada v. Dugger, 941 F. 2d 1551, 1559 (11th Cir. 1991) (a petitioner is not entitled to

an evidentiary hearing when he makes conclusory allegations unsupported by specifics). Third, Williams accuses the prosecutor of wrongdoing by "holding" grand jury records, but Rule 6(e) provides that "[u]nless the court orders otherwise, an attorney for the government will retain control of the recording, the reporter's notes, and any transcript prepared from those notes." Fed. R. Crim. P. 6(e)(1). Thus, the prosecutor did not commit wrongdoing by maintaining custody of grand jury records.

To the extent Williams argues that Rule 6(e)(1) itself violates the Fifth Amendment's grand jury clause or the Supreme Court's decision in John Williams, 504 U.S. 36, he is mistaken. He cites to no authority, and the Court has not located any, holding that Rule 6(e)(1) violates the Fifth Amendment. The Fifth Amendment's grand jury clause states only: "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger." U.S. Const. amend. V, cl. 1. The Fifth Amendment does not provide a right of access to grand jury records as Williams seems to believe. To the contrary, "[i]t has long been a policy of the law that grand jury proceedings be kept secret.... The English rule of grand jury secrecy has been incorporated into our federal common law and remains 'an integral part of our criminal justice system.'" Blalock v. United States, 844 F.2d 1546, 1555 (11th Cir. 1988) (citing Douglas Oil Co. of Cal. v. Petrol Stops Northwest, 441 U.S. 211, 218 n.9 (1979)). Rule 6(e) merely "codifies this secrecy principle and prohibits the disclosure of grand jury material except in limited circumstances provided for in Rule 6(e)(3)."

United States v. Aisenberg, 358 F.3d 1327, 1346-47 (11th Cir. 2004). Thus, Rule 6(e) is consistent with the Fifth Amendment. And the Supreme Court's decision in John Williams, 504 U.S. 36, does not help Williams here. In John Williams, the Supreme Court held that withholding exculpatory evidence from the grand jury was not grounds for dismissing an indictment. Id. at 45, 54-55. The defendant argued that, while the Fifth Amendment itself did not oblige a prosecutor to disclose exculpatory evidence to a grand jury, the Supreme Court should impose a disclosure obligation under its supervisory power. Id. at 45. The Supreme Court rejected that argument, reasoning that "[b]ecause the grand jury is an institution separate from the courts, over whose functioning the courts do not preside … no such 'supervisory' judicial authority exists" to impose a disclosure obligation on the government. Id. at 47. Moreover, the Supreme Court stated that "[i]mposing upon the prosecutor a legal obligation to present exculpatory evidence in his possession [to the grand jury] would be incompatible with" the grand jury system as historically understood. Id. at 52. Nowhere in John Williams did the Supreme Court question the secrecy of grand jury proceedings, nor does the Court's opinion support any of Williams's allegations of prosecutorial wrongdoing before the grand jury. Thus, the decision in John Williams is inapposite.

Finally, even if some error or irregularity occurred during the grand jury proceedings, the guilty verdict establishes that any such error was harmless. See United States v. Mechanik, 475 U.S. 66, 67, 73 (1986); United States v. Flanders, 752 F.3d 1317, 1333 (11th Cir. 2014). A grand jury requires only probable cause to indict an individual, United States v. Martinez, 800 F.3d 1293, 1295 (11th Cir. 2015), a

standard that is lower than that required to convict a person. Here, Williams stipulated that the government could prove each element of the charges against him beyond a reasonable doubt. <u>See</u> Stipulation of Facts; Bench Trial Tr. at 14-24. Following a bench trial based on the stipulated facts, this Court found Williams guilty beyond a reasonable doubt as to each count charged in the Indictment. Bench Trial Tr. at 25-33. The "verdict of guilty beyond a reasonable doubt demonstrates <u>a fortiori</u> that there was probable cause to charge [Williams] with the offenses for which [he was] convicted." <u>Mechanik</u>, 475 U.S. at 67. Thus, the guilty verdict "rendered harmless any conceivable error in the charging decision that might have flowed from" a defect in the grand jury proceedings. <u>Id.</u> at 73; <u>see also</u> <u>Flanders</u>, 752 F.3d at 1333 ("Thus, the petit jury's guilty verdicts demonstrate that there was probable cause to charge Defendants with the offenses for which they were convicted, and any alleged misconduct before the grand jury was harmless."). Accordingly, Williams's challenges to the Indictment and the grand jury process are meritless, in addition to being procedurally defaulted. Therefore, the claims raised in the Amended § 2255 Motion are due to be denied.

## B. First Motion to Supplement: Challenges to ACCA Sentence

After filing the Amended § 2255 Motion, Williams moved to supplement the motion with two claims challenging the ACCA enhancement. <u>See</u> First Motion to Supplement. First, Williams seeks to argue that none of his prior convictions for the sale, delivery, or possession of cocaine with intent to sell or deliver, in violation of Florida Statute section 893.13(1), qualify as a "serious drug offense" under <u>Descamps</u>

16

v. United States, 133 S. Ct. 2276 (2013)[13], and Moncrieffe v. Holder, 133 S. Ct. 1678 (2013).[14] First Motion to Supplement at 4-7. As to this claim, Williams contends that the convictions are not serious drug offenses because Section 893.13(1) does not require any mens rea with respect to the illicit nature of the substance. Id. Second, Williams seeks to assert a claim that the Court erred in counting his 2001 drug offenses as separate ACCA predicates because Williams was sentenced on the same day for both offenses and because the offenses were not separated by an intervening arrest. Id. at 8-9. The United States does not oppose granting leave to supplement, but responds that these claims are procedurally defaulted and meritless. See Response at 5-9.

Upon consideration of the record, the Court will grant the First Motion to Supplement to the extent that the Court will consider Williams's challenges to the ACCA enhancement. For the reasons stated below, his attempts to seek relief on the basis of these claims fail.[15]

---

[13]    In Descamps, the Supreme Court held "that sentencing courts may not apply the modified categorical approach when the crime of which the defendant was convicted has a single, indivisible set of elements." 133 S. Ct. at 2282.

[14]    In Moncrieffe, the Supreme Court held that a Georgia conviction for possession of marijuana with intent to distribute did not constitute "illicit trafficking in a controlled substance" under the Immigration and Nationality Act, 8 U.S.C. §§ 1101(a)(43)(B), 1227(a)(2)(A)(iii). 133 S. Ct. at 1683-84. The Supreme Court explained that the Georgia offense did not match the definition of a felony punishable under the Controlled Substances Act because the offense did not require that the defendant receive any remuneration. Id. at 1686-87.

[15]    Williams procedurally defaulted his ACCA challenges by failing to raise them on direct appeal. But in his First Reply brief, Williams contends that counsel gave ineffective assistance by failing to raise these challenges on direct review. First Reply at 2-3. Thus, liberally construing the First Reply, Williams argues that appellate counsel's ineffective assistance constitutes cause for the procedural default. However, because the underlying challenges to the ACCA enhancement lack merit, as explained below, counsel was not ineffective for not raising these challenges, and Williams was not prejudiced by counsel's decision not to do so.

Pursuant to 18 U.S.C. § 922(g), a person convicted of being a felon in possession of a firearm is ordinarily subject to a maximum term of imprisonment of 10 years. Under the ACCA, however, that person is subject to an enhanced mandatory minimum sentence of 15 years in prison if he has three or more prior convictions for a "violent felony" or a "serious drug offense," or both, each committed on occasions different from one another. 18 U.S.C. § 924(e)(1). The term serious drug offense includes

> an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law….

18 U.S.C. § 924(e)(2)(A)(ii).

The Eleventh Circuit Court of Appeals and the Supreme Court have squarely rejected Williams's argument that, because the statute does not require proof of <u>mens rea</u> with respect to the illicit nature of the substance involved, a conviction for the sale, delivery, or possession with intent to sell or deliver cocaine under Florida Statutes section 893.13(1) is not a serious drug offense under the ACCA. In <u>United States v. Smith</u>, the Eleventh Circuit observed that the ACCA's definition of a serious drug offense is "unambiguous" and "require[s] only that the predicate offense 'involv[es]' … certain activities related to controlled substances." 775 F.3d 1262, 1267 (11th Cir. 2014) (internal citation omitted). "No element of <u>mens rea</u> with respect to the illicit nature of the controlled substance is expressed or implied by" § 924(e)(2)(A)(ii). <u>Id.</u> Because the ACCA's definition does not "require[ ] that a predicate state offense include[ ] an element of <u>mens rea</u> with respect to the illicit nature of the controlled

substance," the Eleventh Circuit held that "[s]ection 893.13(1) of the Florida Statutes is … a 'serious drug offense.'" Id. at 1268.[16] The Supreme Court approved of Smith's reasoning in Shular v. United States, concluding:

> Section 924(e)(2)(A)(ii)'s text and context leave no doubt that it refers to an offense involving the conduct of "manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance." Because those terms describe conduct and do not name offenses, a court applying § 924(e)(2)(A)(ii) need not delineate the elements of generic offenses.

140 S. Ct. 779, 787 (2020) (emphasis in original). In doing so, the Supreme Court affirmed a defendant's ACCA sentence that was based on a prior conviction under Florida Statutes section 893.13(1)(a). Id. Smith and Shular thus foreclose Williams's argument that his prior convictions under Florida Statutes section 893.13(1) are not serious drug offenses.[17]

Williams's second challenge to the ACCA enhancement likewise lacks merit. Williams argues that his 2001 drug offenses do not count as two separate ACCA predicates because he was sentenced for both on the same day and the offenses were not separated by an intervening arrest. However, Williams's argument conflates the

---

[16]    Additionally, the Eleventh Circuit has held repeatedly that a conviction for selling, manufacturing, delivering, or possessing cocaine with intent to sell, manufacture, or deliver (whether or not it occurs within 1,000 feet of a church or business), in violation of Florida Statute sections 893.13(1)(a) or (1)(e), are serious drug offenses because (1) the offenses are state law crimes, (2) the offenses involve manufacturing, distributing, or possessing with intent to manufacture or distribute a controlled substance, and (3) the offenses are punishable by more than ten years in prison. See, e.g., United States v. Samuel, 580 F. App'x 836, 843 (11th Cir. 2014); United States v. Russell Johnson, 570 F. App'x 852, 856-57 (11th Cir. 2014); United States v. Franklin Johnson, 515 F. App'x 844, 847 (11th Cir. 2013).

[17]    Even if the ACCA's definition of a serious drug offense did require knowledge of the illicit nature of the substance, Williams's convictions would still qualify as serious drug offenses because Florida did not eliminate the mens rea requirement for proving a violation of section 893.13(1) until May 13, 2002, after Williams was convicted of each of the ACCA predicates. Response at 8.

test for counting prior sentences separately under U.S.S.G. § 4A1.2(a)(2) with the different-occasions analysis under the ACCA. Unlike U.S.S.G. § 4A1.2, the ACCA's different-occasions analysis does not require an intervening arrest. Nor does the different-occasions inquiry consider whether "the legal consequences of a defendant's separate criminal acts were imposed upon him on the same day." United States v. Wilks, 464 F.3d 1240, 1244 (11th Cir. 2006). Instead, under the ACCA's different-occasions analysis, "[d]istinctions in time and place are usually sufficient to separate criminal episodes from one another even when the gaps are small." United States v. Pope, 132 F.3d 684, 690 (11th Cir. 1998) (citations omitted). "Although the predicate offenses must be distinct, even a small difference in time or place distinguishes convictions for purposes of the ACCA." United States v. Patterson, 423 F. App'x 921, 924 (11th Cir. 2011) (citing United States v. Sneed, 600 F.3d 1326, 1330 (11th Cir. 2010)).

> [T]he "successful" completion of one crime plus a subsequent conscious decision to commit another crime makes that second crime distinct from the first for the purposes of the ACCA. Accordingly, we hold that so long as predicate crimes are successive rather than simultaneous, they constitute separate criminal episodes for purposes of the ACCA. A showing that the crimes reflect distinct aggressions, especially if the defendant committed the crimes in different places, is particularly probative of the sequential nature of those crimes.

Pope, 132 F.3d at 692. "As long as some temporal 'break' exists between offenses, they will be deemed to have occurred on separate occasions." United States v. Holton, 571 F. App'x 794, 798 (11th Cir. 2014) (citing Pope, 132 F.3d at 689-90); see also Sneed, 600 F.3d at 1330 ("Two offenses are distinct if 'some temporal "break" occurs between [them].'") (quoting Pope, 132 F.3d at 690).

20

In determining whether prior ACCA offenses were committed on different occasions, a district court may rely only on <u>Shepard</u>-approved[18] documents and uncontested facts in the PSR. <u>United States v. Longoria</u>, 874 F.3d 1278, 1281 (11th Cir. 2017); <u>Sneed</u>, 600 F.3d at 1332-33 (holding that "sentencing courts may look to certain facts underlying [a] prior conviction" in making the "different occasions inquiry," but must limit themselves to <u>Shepard</u>-approved sources); <u>United States v. Anthony Johnson</u>, 634 F. App'x 227, 231-32 (11th Cir. 2015) (because uncontested facts in the PSR are deemed admitted, district court could rely on those facts to make the different-occasions determination). A charging instrument is a <u>Shepard</u>-approved document. <u>Shepard</u>, 544 U.S. at 16; <u>United States v. Chitwood</u>, 676 F.3d 971, 976 (11th Cir. 2012).

Here, the charging instrument and the uncontested portions of the PSR reflect that each of the 2001 drug offenses were temporally distinct.[19] According to the PSR, Williams sold cocaine to a confidential informant on April 2, 2001, and then two days later, on April 4, 2001, Williams did the same again. PSR at ¶ 38. Counts Five and Six of the information filed in state court – the two counts for which Williams was convicted – reflect the same facts. (Crim. Doc. 64, Gov't Ex. 2). Thus, the PSR and the charging document establish that Williams completed one sale of cocaine and then made "a subsequent conscious decision to commit another crime," which "makes that second [sale of cocaine] distinct from the first for the purposes of the ACCA." <u>Pope</u>, 132

---

[18]   <u>Shepard v. United States</u>, 544 U.S. 13 (2005).

[19]   Williams did not lodge any objections to the PSR's factual statements. Sentencing Tr. at 3-4. Indeed, Williams acknowledged that the 2001 drug offenses occurred on two separate dates in April 2001. <u>Id.</u> at 6.

F.3d at 692. Because the "predicate crimes [were] successive rather than simultaneous, they constitute separate criminal episodes for purposes of the ACCA." Id. Therefore, the Court properly counted each of Williams's 2001 drug offenses for selling cocaine as a separate serious drug offense.

Having considered the claims contained in Williams's First Motion to Supplement, the Court determines that Williams's challenges to the ACCA enhancement lack merit. As such, the claims are due to be denied.

### C. First Reply and Second Reply

In his First Reply brief (Civ. Doc. 13) and Second Reply brief (Civ. Doc. 18), Williams raises additional claims that were not pled in the Amended § 2255 Motion or the First Motion to Supplement. In the First Reply, Williams argues that trial counsel gave ineffective assistance by failing to challenge the ACCA enhancement on the ground that his prior convictions did not qualify as serious drug offenses under Shepard, 544 U.S. 13, Chambers v. United States, 555 U.S. 122 (2009), and Begay v. United States, 553 U.S. 137 (2008), none of which concerned the definition of a "serious drug offense." First Reply at 2-3.[20] Williams also contends that the ACCA enhancement is unlawful under the United States Supreme Court's decision in Johnson v. United States, 135 S. Ct. 2551 (2015). First Reply at 7; Second Reply at 1-2.

---

[20]     Williams states that he previously raised these ineffective assistance claims in a § 2255 motion, First Reply at 2, but the record shows he did not do so. See generally Amended § 2255 Motion; First Motion to Supplement. Williams challenged his ACCA sentence in the First Motion to Supplement, but he raised no allegations concerning the effective assistance of counsel.

Claims, such as these, that are raised for the first time in a reply brief and without first seeking leave to amend are procedurally improper. See Oliveiri v. United States, 717 F. App'x 966, 967 (11th Cir. 2018) (concluding that the district court did not err by failing to address a claim that the petitioner raised for the first time in his reply to the government's response); Snyder v. United States, 263 F. App'x 778, 779–80 & n.2 (11th Cir. 2008) (same). Williams neither sought nor obtained leave of the Court to add these new claims. Thus, the claims are not properly before the Court.

Regardless, the claims Williams seeks to assert in the reply briefs lack merit. Williams properly qualified for the ACCA enhancement because, for the reasons discussed in Section III.B, he had three prior convictions that qualified as a serious drug offense, each committed on different occasions. Thus, counsel's failure to press additional challenges to the ACCA enhancement was neither deficient nor prejudicial. See Chandler v. Moore, 240 F.3d 907, 917 (11th Cir. 2001) (a lawyer does not provide ineffective assistance by deciding not to raise a meritless or frivolous issue).

As for Williams's claim that his ACCA sentence is unlawful under Johnson, this argument lacks merit too. In Johnson, the Supreme Court struck down as unconstitutionally vague the ACCA's residual clause, which is part of the definition of a "violent felony" under 18 U.S.C. § 924(e)(2)(B)(ii). 135 S. Ct. at 2557, 2563. However, the Supreme Court did not call into question any other part of the ACCA. Id. at 2563. "The Johnson decision did not affect the ACCA's definition of 'serious drug offenses.'" Bell v. United States, 688 F. App'x 593, 594-95 (11th Cir. 2017). Because Williams's ACCA enhancement was based on three prior convictions for a serious drug offense,

see PSR at ¶ 26, <u>Johnson</u> has no impact on Williams's sentence. Accordingly, the <u>Johnson</u> claim is due to be denied.

### D. Second Motion to Supplement

Finally, Williams filed a "Motion Seeking to Dismiss Suppression Hearing" (Civ. Doc. 17), which the Court construed as a Second Motion to Supplement. In this motion, Williams argues that his first attorney, Susan Yazgi, gave ineffective assistance during the suppression hearing by failing to address alleged discrepancies in the police officers' testimony and by failing to call Williams to testify. <u>Id.</u> at 1-3. Williams also alleges, in conclusory fashion, that his second attorney, Noel Lawrence, "was not effective either." <u>Id.</u> at 2. Williams does not explain how Mr. Lawrence was ineffective in relation to the suppression hearing, considering that Mr. Lawrence was not appointed to replace Ms. Yazgi until after the suppression hearing, after entry of the report and recommendation on the motion to suppress, and after the deadline had expired to file objections to the report and recommendation. (<u>See</u> Crim. Doc. 40; Order Appointing Noel Lawrence).

The Second Motion to Supplement is due to be denied because the new ineffective assistance claim is untimely under 28 U.S.C. § 2255(f) and does not relate back to the pleading that initiated the § 2255 proceedings, i.e., the "Motion for Dismissal of Indictment" filed on September 3, 2013. (Crim. Doc. 86). Williams's conviction and sentence became final on October 1, 2012, when the United States Supreme Court denied his petition for a writ of certiorari. (Crim. Doc. 83; Denial of Certiorari); <u>Washington v. United States</u>, 243 F.3d 1299, 1300-01 (11th Cir. 2001).

24

Under 28 U.S.C. § 2255(f)(1), Williams had one year from that date, or until October 1, 2013, to raise any collateral challenges to the judgment. See Beeman v. United States, 871 F.3d 1215, 1219 (11th Cir. 2017) (§ 2255's statute of limitations applies on a claim-by-claim basis, not to the motion as a whole) (citing Zack v. Tucker, 704 F.3d 917, 924, 926 (11th Cir. 2013) (en banc)). Williams timely filed the original "Motion for Dismissal of Indictment" on September 3, 2013, raising various challenges to the Indictment and the grand jury proceedings. However, Williams did not raise any claims concerning the suppression hearing or the effectiveness of trial counsel. Williams did not raise the current ineffective assistance claim until he filed the Second Motion to Supplement on January 27, 2016, more than three years after his conviction and sentence became final. See Second Motion to Supplement at 4; Houston v. Lack, 487 U.S. 266, 276 (1988) (a pro se prisoner's submission is deemed filed on the date he delivers it to prison authorities for mailing). Thus, the new ineffective assistance claim is untimely under § 2255(f)(1). Williams does not allege that equitable tolling or the alternative limitations periods under §§ 2255(f)(2)-(f)(4) apply to this claim.

The new claim could avoid the statute of limitations if it relates back to the original pleading under Rule 15(c), Federal Rules of Civil Procedure. Rule 15(c) provides that "[a]n amendment to a pleading relates back to the date of the original pleading when ... the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). In Mayle v. Felix, 545 U.S. 644 (2005), the Supreme Court rejected a broad reading of "conduct, transaction, or occurrence"

in habeas cases that would be "capacious" enough to allow new claims to relate back merely because the new claims arose from the same trial, conviction, or sentence. Id. at 656-64. Rather, the Supreme Court approved a narrower reading of "conduct, transaction, or occurrence," which would "allow relation back only when the claims added by amendment arise from the same core facts as the timely filed claims, and not when the new claims depend upon events separate in 'both time and type' from the originally raised episodes." Id. at 657 (citation omitted); see also id. at 664 ("So long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order.") (footnote omitted).

Williams's new ineffective assistance claim does not relate back to the original pleading because it does not arise from the same core facts as the timely-filed claims. As noted earlier, in the original "Motion for Dismissal of Indictment," Williams argued that the Indictment and the grand jury proceedings were defective. However, Williams alleged no facts and raised no argument regarding the effectiveness of his trial counsel or the denial of his pretrial Motion to Suppress. As such, the new ineffective assistance claim is not "tied to a common core of operative facts" and "relation back will [not] be in order." Mayle, 545 U.S. at 664. Because the new claim does not relate back, it is barred by the statute of limitations. Accordingly, the Second Motion to Supplement is due to be denied.

### E. Conclusion

Having considered all of Williams's filings, the Court concludes that the allegations contained in the Amended § 2255 Motion, the First Motion to Supplement,

the First Reply, and the Second Reply are meritless or procedurally defaulted. Additionally, the ineffective assistance of counsel claim contained in the "Motion Seeking to Dismiss Suppression Hearing," which the Court construes as a Second Motion to Supplement, is time-barred. Accordingly, Williams is not entitled to § 2255 relief.

## IV.    Certificate of Appealability

The undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Williams "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335–36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon

consideration of the record as a whole, this Court will deny a certificate of appealability.

As such, and in accordance with the Rules Governing Section 2255 Cases in the United States District Courts, it is hereby **ORDERED:**

1. Petitioner Walter L. Williams's Amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Civ. Doc. 1) is **DENIED**.

2. Williams's First Motion to Supplement (Civ. Doc. 7-1/ Civ. Doc. 16) is **GRANTED** to the extent that the Court has considered the claims contained therein. However, the claims are **DENIED** on the merits.

3. Williams's "Motion Seeking to Dismiss Suppression Hearing" (Civ. Doc. 17), construed as the Second Motion to Supplement, is **DENIED**.

4. The Clerk is directed to enter judgment in favor of the United States and against Williams, and close the file.

5. If Williams appeals the denial of the petition, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida this 19th day of April, 2021.

**MARCIA MORALES HOWARD**
United States District Judge

lc 19

Copies:
Counsel of record
Petitioner